UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

HYPER ICE, INC. AND HYPERICE IP         CASE NO.: 1:24-cv-21791
SUBCO, LLC,

     Plaintiff,

v.

THE INDIVIDUALS, CORPORATIONS,
LIMITED LIABILITY COMPANIES,
PARTNERSHIPS, AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON
SCHEDULE A,

     Defendants.

_____

**DEFENDANT CINCOM'S OPPOSITION TO PLAINTIFFS' MOTION
FOR PRELIMINARY INJUNCTION, MOTION TO MODIFY THE
TEMPORARY RESTRAINING ORDER, AND MOTION FOR LEAVE TO
FILE SUPPLEMENTAL ANALYSIS REGARDING MERIT**

## <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION ................................................................................................. 1

II.    PROCEDURAL HISTORY ................................................................................ 3

III.   PLAINTIFF'S ASSETS FREEZE REQUEST LACKS MERIT .............................. 4

       A.    Assets Freeze in TRO ........................................................................... 4

       B.    Trademark Violation and Assets Freeze ............................................. 5

       C.    Utility Patent Does Not Provide Equitable Monetary Relief......................... 6

       D.    Request for Modification ..................................................................... 7

IV.   PLAINTIFFS' ENFORCEMENT OF THE TRO HAS CAUSED
       SIGNIFICANT PREJUDICE ............................................................................ 9

V.    PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
       SHOULD BE DENIED ................................................................................... 11

       A.    Preliminary Injunction Standard ................................................... 11

       B.    Plaintiffs Cannot Demonstrate A Likelihood Of Success On The
            Merits ............................................................................................... 12

            1.    Plaintiffs failed to plead direct infringement against
                Cincom under *Twombly* ...................................................... 13

            2.    Defendant's Counsel Awaiting Prior Art Search Results
                and Requesting Leave to Supplement................................. 14

       C.    Plaintiffs Fail to Demonstrate Irreparable Harm By Relying On
            Conclusory Statements And Failing To Provide Factual Evidence.............. 14

       D.    The Balance Of Equities Favors Denial The Preliminary
            Injunction ....................................................................................... 16

       E.    Plaintiffs Fail To Demonstrate That An Injunction Favors Public
            Interests ........................................................................................... 17

VI.   CONCLUSION............................................................................................... 18

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
694 F.3d 1312 (Fed. Cir. 2012)..................................................................................17

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
239 F.3d 1343 (Fed. Cir. 2001)..................................................................................14

*Arctic Cat Inc. v. Bombardier Recreational Products Inc.*,
950 F.3d 860 (Fed. Cir. 2020).....................................................................................8

*Blue Water Innovations, LLC v. Fettig*,
No. 18-60671, 2019 WL 1904589 (S.D. Fla. Mar. 8, 2019)......................................13

*Brumfield, Trustee for Ascent Trust v. IBG LLC*,
97 F.4th 854 (Fed. Cir. 2024) .....................................................................................7

*Celgard, LLC v. LG Chem, Ltd.*,
624 Fed. App'x 748 (Fed. Cir. 2015)..........................................................................17

*Century Sr. Services v. Consumer Health Ben. Ass'n, Inc.*,
770 F.Supp.2d 1261 (S.D. Fla., 2011) .........................................................................9

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006)..........................................................................................2, 12, 15

*Intel Corp. v. ULSI Sys. Tech., Inc.*,
995 F.2d 1566 (Fed.Cir.1993).....................................................................................11

*Lola Style, Inc. v. DM Merchandising, Inc.*,
No. 13-20206, 2013 WL 12064498 (S.D. Fla., May 22, 2013)..................................15

*National Steel Car, Ltd. v. Canadian Pacific Ry., Ltd.*,
357 F.3d 1319 (Fed. Cir. 2004)..............................................................................11, 12

*New England Braiding Co. v. A.W. Chesterton Co.*,
970 F.2d 878 (Fed. Cir. 1992).....................................................................................14

*Raptor, LLC v. Odebrecht Constr.*,
No. 17-21509, 2017 WL 3503399 (S.D. Fla. June 22, 2017) (Altonaga, J.)......12, 13

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
659 F.3d 1142 (Fed. Cir. 2011)..............................................................................12, 15

*Siegel v. LePore*,
    234 F.3d 1163 (11th Cir. 2000) ............................................................................15

*State Industries, Inc. v. Mor-Flo Industries, Inc.*,
    883 F.2d 1573 (Fed. Cir. 1989)..............................................................................6

*Titan Tire Corp. v. Case New Holland, Inc.*,
    566 F.3d 1372 (Fed. Cir. 2009)........................................................................12, 14

*Zorro Productions, Inc. v. Individuals, Corporations, Limited Liability
    Companies, Partnerships, and Unincorporated Associations Identified on
    Schedule A Hereto*,
    2023 WL 8807254 (N.D. Ill., Dec. 20, 2023) ..................................................5, 18

*Zorro Productions, Inc. v. Individuals, Corporations, Limited Liability
    Companies, Partnerships, and Unincorporated Associations Identified on
    Schedule A Hereto*,
    Case No. 23-cv-5761, Dkt. 38 (N.D. Ill., April, 22, 2024) ...................................11

**Statutes**

15 U.S.C. § 1117(a) ..........................................................................................................5, 6

15 U.S.C. § 1125 ...................................................................................................................6

35 U.S.C. § 284 ..................................................................................................................6, 7

35 U.S.C. § 287 .....................................................................................................................8

35 U.S.C. § 289 .....................................................................................................................6

1 D. Dobbs, Law ...................................................................................................................6

**Other Authorities**

Columbia Law Review .........................................................................................................17

Fed. R. Civ. P. 11(b)(2)......................................................................................................7, 9

Defendant Shenzhen Cincom E-Commerce Co., Ltd. ("Defendant" or "Cincom") hereby opposes Plaintiffs Hyper Ice, Inc. and Hyperice IP Subco., LLC.'s ("Plaintiffs" or "Hyper Ice") Motion for Preliminary Injunction ahead of its May 30 deadline due to the recently scheduled status conference on the same date. *See* Dkt. 31 ("A status conference is set for May 30, 2024, at 2:30 PM"). Defendant Cincom raised the same issues with Plaintiffs as Defendant Fit King did in its brief (Dkt. 29). Cincom also conducted a meet and confer with Plaintiffs regarding these issues. As Plaintiffs do not have a basis to enforce the TRO to suspend Defendant's entire store, which includes mostly non-accused products generating annual sales of over $18 million, Defendants requested that Plaintiffs notify Amazon to limit the TRO. However, this request remained unanswered at the time of this filing.[1] *See Declaration of Ziyong Li In Support Of Defendant Cincom's Opposition to Plaintiffs' Motion for Preliminary Injunction* ("*Li Decl.*"), ¶ 2, **Exhibit D**.

To avoid further misunderstanding and delay, Defendant files this Opposition and aims to provide the Court with comprehensive case law and facts relevant to the status conference on the 30th. To the extent the Court requires a supplemental brief on the merits of the case for the purposes of the preliminary injunction, Defendant Cincom requests leave to file such an analysis at a time that is convenient for both the Court and the other parties.

## I.   <u>INTRODUCTION</u>

Plaintiffs allege that Defendant and other entities have infringed on their US Utility Patent No. 11,857,482 ("the '482 Patent) by selling certain accused products through Amazon marketplace. However, the Temporary Restraining Order ("TRO") (Dkt. 15) as enforced by Plaintiffs extends beyond the scope of the issued TRO and the alleged infringement, which has

---

[1] Should a response be received subsequent to this filing, Defendant will promptly address the progress at the status conference and incorporate it, if necessary.

resulted in the complete suspension of Defendant's Amazon store (Seller ID A1T2DKN3ATZLE2) and significantly affects Defendant's business operations. *Declaration of Xia Qiu in Support of Defendant Cincom's Opposition to Plaintiffs' Motion for Preliminary Injunction* ("*Qiu Decl.*"), ¶¶ 2, 3, 7, 8.

While Defendant's total sales of the accused products (Amazon Standard Identification Numbers (ASIN) B089NFCJDD and B08H7SPR6S) during the damages period are roughly $35,474.82, Defendant's store, which has been entirely deactivated, had an average annual revenue of $18 million, with recent daily revenue from irrelevant products exceeding $50,000. *Qiu Decl.*, ¶¶ 5, 8, 10, **Exhibit C**. As a result of the TRO, more than $900,000 has been frozen by Amazon, and over $6 million worth of irrelevant products in Amazon's warehouse are at risk of being removed by Amazon. *Qiu Decl.*, ¶¶ 6, 13.

Plaintiff's enforcement of the TRO is disproportionate to the alleged damages and lacks a legal basis under Supreme Court precedent because Plaintiffs are seeking ***monetary relief at law*** rather than ***equitable monetary relief*** such as restitution and disgorgement of profits. Moreover, the enforcement of the TRO has led to severe operational disruptions, including the inability to pay employees and potential layoffs. *Qiu Decl.*, ¶¶ 11, 12.

Plaintiffs have failed to meet the requisite legal standards for a preliminary injunction. Specifically, Plaintiffs have not demonstrated a likelihood of success on the merits, as substantial questions exist regarding the infringement of the '482 Patent. Furthermore, Plaintiffs' claims of irreparable harm are unsupported by factual evidence and rely on outdated legal presumptions that have been overruled by the Supreme Court in *eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388 (2006).

2

For these reasons, Defendant respectfully requests that the Court deny Plaintiffs' motion for a preliminary injunction.  In the interim, Defendant seeks modification of the TRO to release the frozen funds and allow for the posting of a bond, which will ensure that any restraint on assets is commensurate with the actual damages claimed.  Defendant also requests that the Court direct the Plaintiffs to explicitly notify Amazon to limit the TRO and any potential injunction to the Accused Products, thereby mitigating undue prejudice and allowing the continuation of non-accused business activities.

## II.   <u>PROCEDURAL HISTORY</u>

On January 2, 2024, the asserted '482 Patent was issued by the USPTO.  *See* Dkt. 1-1.  Five months later, on May 8, 2024, Plaintiffs filed a Complaint for patent infringement of the '482 Patent. Dkt. 1 ("Complaint"). Plaintiffs' Complaint alleges that the 35 entities named in its Schedule A infringe the '482 Patent by importing, developing, designing, manufacturing, distributing, marketing, offering to sell and/or selling infringing products through Amazon Marketplace. *Id.* at 3. Defendant is one of the entities named in Plaintiffs' Schedule A to the Complaint. Schedule A at 5.  On May 9, 2024, Plaintiffs filed an *ex parte* application seeking "a temporary restraining order, including a temporary injunction, a temporary asset restraint, expedited discovery, and upon expiration of the temporary restraining order, a preliminary injunction against" the entities listed in Schedule A—including Defendant. Dkt. 5 at 1.  On May 10, 2024, the Court granted Plaintiffs' *ex parte* application and issued a temporary restraining order against Defendant and the other entities listed in Schedule A. Dkt. 15 at 4-5.

On May 17, 2024, Defendant received a notice from Amazon indicating that the accused products were taken down and all funds in the Amazon account were frozen, totaling over $900,000.00.  *Qiu Decl.*, ¶ 6, **Exhibit A**.  However, the enforcement of TRO has been escalated since Defendant's counsel filed a notice of appearance on May 23, 2024.

A couple of days later, on May 25, 2024, Defendant received another email from Amazon, stating that Defendant's entire store was suspended and instructing Defendant to contact Plaintiff's counsel. *Qiu Decl.*, ¶¶ 7, 8, **Exhibit B**. Since then, Defendant's store has been inoperable, significantly affecting its business because the store also sells numerous non-accused products. *Qiu Decl.*, ¶¶ 8-16.

## III.   PLAINTIFF'S ASSETS FREEZE REQUEST LACKS MERIT

### A.   Assets Freeze in TRO

Defendant respectfully requests the Court to consider a recent opinion from the Northern District of Illinois, which summarizes the case law and standards for determining an asset freeze in "Schedule A" cases. Although this opinion is not binding on this Court, it provides relevant background. In his opinion, the Honorable Judge Steven Seeger explained that an asset freeze is only available when the plaintiff seeks ***equitable monetary*** relief, and it is not available when the plaintiff seeks ***monetary relief at law***.

> [I]n Schedule A cases, the plaintiffs' bar typically seeks remedies at law – such as statutory damages – not equitable monetary relief. The request for a remedy at law, not a remedy in equity, affects the calculus when it comes to an asset freeze.
>
> The Supreme Court has made clear that courts lack the power to issue an asset freeze at the beginning of a case, unless that party is seeking ***equitable monetary relief***. *See Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999). In *Grupo Mexicano*, the Supreme Court held that a district court has "no authority to issue a preliminary injunction preventing [a defendant] from disposing of their assets pending adjudication of [plaintiff's] contract claim for money damages." *Id.* at 333.
>
> The Supreme Court reinforced the long-standing rule that "***a judgment establishing the debt was necessary before a court of equity would interfere with the debtor's use of his property.***" *Id.* at 321. "[A]s a general matter [] prejudgment asset restraints are not proper simply to establish a fund from which a later award of money damages can be satisfied." *See Banister v. Firestone*, 2018 WL 4224444, at *9 (N.D. Ill. 2018).
> . . .
> Truth be told, the Schedule A plaintiffs' bar asks courts in this district to lock down assets through an asset freeze on day one of a case, and do so under seal. And then,

at the end of the case, Schedule A plaintiffs simply ask the Court to bless an order requiring third parties to hand over all of the frozen funds. ***The Schedule A plaintiffs receive a remedy at law, not a remedy in equity, which means that there was no justification for an asset freeze in the first place***.

*Zorro Productions, Inc. v. Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A Hereto*, 2023 WL 8807254 at *4 (N.D. Ill., Dec. 20, 2023) (emphasis added).

### B.       Trademark Violation and Assets Freeze

Indeed, Judge Seeger acknowledged that it is possible to obtain an asset freeze in some intellectual property cases "if a plaintiff requested and received ***equitable monetary relief*** at the end of the case, like ***restitution*** or ***disgorgement*** of ill-gotten gains." *Zorro Productions*, 2023 WL 8807254 at *4 (emphasis added).

Defendant does not dispute this.  In fact, this seems to be a position shared by another defendant, Fit King, who filed its Motion to Modify the Temporary Restraining Order on May 26, 2024.  In that Motion, Fit King acknowledged that the Court "has authority to freeze assets to preserve an equitable ***accounting of profits*** under 15 U.S.C. § 1117(a)." Dkt. 29 at 4 (citing *SEC v. ETS Payphones*, 408 F.3d 727, 735 (11th Cir. 2005) (finding it proper to freeze all of the defendant's assets, because it was necessary to preserve sufficient funds for the potential ***disgorgement*** in the case)) (emphasis added).

Indeed, in their *Ex Parte* TRO motion, Plaintiffs did rely on trademark law 15 U.S.C. § 1117(a) and stated that they "will be entitled to ***an accounting*** and payment of the ***profits*** earned by Defendants throughout the course of their illicit scheme."  Mem. In Supp. of Pl.['s] Mot. for TRO, at IV, B.  However, Plaintiffs did not allege counterfeit or trademark infringement in the Complaint.  Dkt. 1 at 4-5 (Count I Utility Patent Infringement).  In addition, Plaintiffs do not provide any authority where a TRO can be granted under trademark law 15 U.S.C. § 1117(a) when

trademark infringement is not alleged in the Complaint and only patent infringement is alleged.

Relevant portion of 15 U.S.C. § 1117(a) recites:

> When a violation of any right of the **registrant of a mark** registered in the Patent and Trademark Office, a violation under **section 1125(a) or (d)** of this title, or a willful violation under **section 1125(c)** of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.

15 U.S.C. § 1117(a).  The sections referenced here are all trademark related causes of action.  *See* 15 U.S.C. § 1125 ("False designations of origin, false descriptions, and dilution forbidden").

### C.      Utility Patent Does Not Provide Equitable Monetary Relief

The monetary relief under patent law is provided under 35 U.S.C. § 284, which states: "Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court."  35 U.S.C. § 284.  It is well established that monetary damages under Section 284 encompass the patent owner's lost profits and reasonable royalties, which are considered monetary damages at law.  *See State Industries, Inc. v. Mor-Flo Industries, Inc.*, 883 F.2d 1573, 1577 (Fed. Cir. 1989) ("The measure of damages is an amount which will compensate the patent owner for the pecuniary loss sustained because of the infringement. 35 U.S.C. § 284 (1982). . . . But the floor for a damage award is no less than a reasonable royalty, . . . and the award may be split between lost profits as actual damages to the extent they are proven and a reasonable royalty for the remainder.").

These damages, *i.e.*, lost profits and reasonable royalty, differ from equitable monetary damages such as restitution.  *See* 1 D. Dobbs, Law of Remedies § 4.1(1) (2d ed. 1993) ("Restitution measures the remedy by the defendant's gain and seeks to force disgorgement of that gain. ***It differs in its goal or principle from damages***, which measures the remedy by the ***plaintiff's loss***

6

and seeks to provide compensation for that loss."). While patent law does allow for the recovery of an infringer's profits, this is limited to design patents, not utility patents. *See* 35 U.S.C. § 289 ("Additional remedy for infringement of ***design patent***") (emphasis added). In this case, the asserted patent is a utility patent. *See* Dkt. 1 at 4 ("Count I Utility Patent Infringement"); *see also* Dkt. 1-1 (Utility Patent No. 11,857,482).

In fact, monetary damages at law under 35 U.S.C. § 284 are what Plaintiffs seek in their Complaint. *See* Dkt. 1, ¶ 19 ("As a result, Hyperice is entitled to an award of damages adequate to compensate it for the infringement in an amount that is in no event less than a reasonable royalty pursuant to ***35 U.S.C. §284***.") (emphasis added). In addition, Plaintiffs have not made any "argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). Thus, the only monetary damages Plaintiffs could recover here are those at law, and they have not provided any valid legal basis to request an asset freeze under Supreme Court precedent.

### D.    Request for Modification

To the extent the Court finds that some form of asset limitation is nevertheless appropriate, Defendant respectfully requests that the Court modify it by replacing the asset freeze with a bond posted with the Court and set the bond amount to $50,000.00 (Fifty Thousand).

Here, Plaintiffs' recoverable damages are limited. It is well settled that "a patentee 'may of course obtain damages only for acts of infringement ***after the issuance of the ... patent***.'" *Brumfield , Trustee for Ascent Trust v. IBG LLC*, 97 F.4th 854, 877 (Fed. Cir. 2024) (citing *Hoover Group, Inc. v. Custom Metalcraft, Inc.*, 66 F.3d 299, 304 (Fed. Cir. 1995)) (emphasis added). The Asserted Patent was issued on January 2, 2024. *See* Dkt. 1-1. Thus, Plaintiffs at most can claim damages from January 2, 2024. As stated by Defendant's testimony under oath, Defendant sales of the accused products since January 2, 2024 included 722 items and total revenue of 35,474.82.

*Qiu Decl.*, ¶ 5.  However, the current asset under freeze is over $900,000.00, over 25 times of the total sales.  *Qiu Decl.*, ¶ 6.

In addition, there are other obstacles for Plaintiffs seeking to recover damages.  For instance, Plaintiffs failed to plead marking under 35 U.S.C. § 287.  The landmark Federal Circuit case on marking was appealed from the Southern District of Florida.  *Arctic Cat Inc. v. Bombardier Recreational Products Inc.*, 950 F.3d 860 (Fed. Cir. 2020).  There, the Federal Circuit stated:

> If [] a patentee makes or sells a patented article and fails to mark in accordance with § 287, the patentee cannot collect damages until it either begins providing notice or sues the alleged infringer—the ultimate form of notice—and then only for the period after notification or suit has occurred.

*Id*. at 864.  Here, Plaintiffs admit that "Hyperice [products] are covered by one or more claims of the Hyperice Patent" (Dkt. 1, ¶ 12) but fail to plead marking and are not entitled to claim pre-filing damages.  *See Shenzhen Hengzechen Technology Co., Ltd. v. Individuals, Partnerships , and Unincorporated Associations identified on Schedule "A"*, 2024 WL 475269 at *1 (S.D. Fla., February 7, 2024) (***dismissing the plaintiff's claim for damages prior to the unsealing*** of the amended complaint due to the failure to plead marking).  Indeed, Defendant has no opportunity to sell any accused products after receiving notice of this lawsuit because the notice date coincided with Amazon taking down Defendant's accused products.  *Qiu Decl.*, ¶ 6.  And considering Defendant's sworn agreement not to sell the accused products in the future (*Qiu Decl.*, ¶ 16), Plaintiffs should not be entitled to any damages due to its failure to mark.

Thus, considering all the aforementioned factors, if the Court still deems it necessary to retain some funds, Defendant proposes to post a bond of $50,000 (Fifty Thousand) in exchange for the release of the frozen assets in its Amazon account, which now exceed $900,000.  If the Court finds that $50,000 is insufficient, Defendant is willing to discuss and potentially post a higher amount to be determined during the hearing.

## IV.   <u>PLAINTIFFS' ENFORCEMENT OF THE TRO HAS CAUSED SIGNIFICANT PREJUDICE</u>

The TRO entered by the Court specifically addresses only the Accused Products, a point that is unequivocally clear.  *See, e.g.*, Dkt. 15 at 5 ("temporarily restrained as follows: (a) From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring **any products** not authorized by the Plaintiffs and ***that utilize the technology of one or more claims in the Hyperice Patent***").  However, the enforcement actions taken under the TRO have led to an escalation resulting in the suspension of Defendant's entire store that generates an annual revenue exceeding 18 million dollars, with the vast majority of its products unrelated to the Accused Products.  *Qiu Decl.*, ¶¶ 8-10, **EXHIBIT C**.

Initially, on May 17, 2024, Amazon froze the assets and delisted only the Accused Products in accordance with the scope of the TRO.  *Qiu Decl.*, ¶ 6.  However, after Defendant's counsel filed a notice of appearance, Amazon sent another email to Defendant on May 25, informing that the entire store was suspended and advising Defendant to contact Plaintiffs' counsel to resolve this issue.  *Qiu Decl.*, ¶ 7.  Shortly after, Defendant requested a meet and confer with Plaintiffs to discuss the following: (1) the scope of the TRO, and (2) the Rule 11 basis for requesting a TRO under trademark law.  The parties had a meet and confer on May 28, when Defendant requested that Plaintiff "notify Amazon . . . to limit the TRO to the specific accused product ASIN and reactivate the store."  **Exhibit D**.  Plaintiff had not done so by the time of filing this brief.

Granted, Defendant acknowledges the broad scope of litigation privilege in Florida.  *See, e.g., Century Sr. Services v. Consumer Health Ben. Ass'n, Inc.*, 770 F.Supp.2d 1261, 1265 (S.D. Fla., 2011) ("absolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious

behavior such as the alleged misconduct at issue, so long as the act has some relation to the proceeding.") (citation omitted).

However, from a fairness perspective, the suspension of the entire store raises a concerning risk; it suggests that continued enforcement of the TRO and any preliminary injunction may result in significant prejudice.  Indeed, Defendant Cincom is suffering tangible damages, losing over $50,000 in daily sales.  *Qiu Decl.*, ¶ 10.  As stated in Defendant's testimony under oath, Defendant's Amazon Store had been in continuous operation since 2017 until May 25, 2024, until Amazon suspended the entire store due to the enforcement of the TRO.  *Qiu Decl.*, ¶ 7.  Before the suspension, Defendant's store generates over $18 million in annual revenue.  *Qiu Decl.*, ¶ 8.  The revenue from the Accused Products constitutes only a small fraction of this total, with patent-related damages amounting to $35,474.82 since January 2, 2024, while daily revenue from non-accused products exceeds $50,000.  *Qiu Decl.*, ¶¶ 5, 10, **EXHIBIT C**.

With the entire store shut down, Defendant is facing significant financial challenges, including difficulties in paying employee salaries on time and potential layoffs to maintain cash flow and ensure the company's survival.  *Qiu Decl.*, ¶ 11.  The asset restraint currently proposed in the Preliminary Injunction motion would severely impact Defendant's liquidity and operational capabilities, as access to funds is essential for business continuity.  *Qiu Decl.*, ¶ 12.

Additionally, Defendant has approximately $6 million worth of products stored in Amazon's warehouse, most of which are not accused.  *Qiu Decl.*, ¶ 13, **EXHIBIT C**.  If these products cannot be actively sold on Amazon, the platform may force Defendant to remove them from the warehouse.  *Id*.  Failure to do so could result in Amazon disposing of these products, which again leads to substantial financial losses for Defendant.  *Id*.

Furthermore, active sales are essential for maintaining and improving an Amazon store's ranking, which affects its visibility in search results. *Qiu Decl.*, ¶ 14. A suspension of the store through a TRO or preliminary injunction would lead to inactivity and cause the store's ranking to drop. *Qiu Decl.*, ¶ 15. This loss of visibility would damage the store's goodwill and reputation and result in irreparable harm that cannot be easily remedied, even if the suspension lasts only one or two weeks. *Id.* [2]

To avoid undue prejudice while protecting Plaintiffs' legitimate interests, Defendant has sworn under oath 1) not to sell the Accused Products until this case is adjudicated or settled and 2) to pay any judgment the Court may award to Plaintiff. *Qiu Decl.*, ¶¶ 16, 17. Therefore, to the extent the Court upholds the TRO and/or issues a preliminary injunction, Defendant requests that the Court order Plaintiffs to instruct Amazon to reactivate the Defendant's account and limit the TRO and any potential injunction to only the Accused Products. This explicit limiting instruction is necessary to ensure the proper enforcement of the TRO and any future injunctions.

## V.    PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION SHOULD BE DENIED

### A.    Preliminary Injunction Standard

The Federal Circuit has consistently held that "[a] preliminary injunction is a 'drastic and extraordinary remedy that is not to be routinely granted.'" *National Steel Car, Ltd. v. Canadian Pacific Ry., Ltd.*, 357 F.3d 1319, 1324 (Fed. Cir. 2004) (citation omited *Intel Corp. v. ULSI Sys.*

---

[2] Given the above circumstances, Plaintiffs' current bond of $5,000 is grossly inadequate. *See Zorro Productions, Inc. v. Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A Hereto*, Case No. 23-cv-5761, Dkt. 38 at 5 (N.D. Ill., April, 22, 2024) ("Plaintiff shall deposit with the Court Three Hundred and Ten Thousand Dollars ($310,000.00), either cash, cashier's check or surety bond, as security, which amount was determined adequate for the payment of such damages as any person may be entitled to recover as a result of a wrongful restraint hereunder.") *Li Decl.*, ¶ 3, **Exhibit E**.

11

*Tech., Inc.*, 995 F.2d 1566, 1568 (Fed.Cir.1993).  "To obtain a preliminary injunction in the district court, the moving party must demonstrate [1] a reasonable likelihood of success on the merits, [2] irreparable harm in the absence of a preliminary injunction, [3] a balance of hardships tipping in its favor, and [4] the injunction's favorable impact on the public interest." *National Steel Car*, 357 F.3d at 1324-25.

A preliminary injunction in patent cases has become even more rare since the Supreme Court's ruling in *eBay Inc. v. MercExchange, L.L.C.*, which eliminated the presumption of irreparable harm in patent cases.  *See* 547 U.S. 388, 391 (2006).  Since that decision, the Federal Court has explicitly held that there is no more presumption of irreparable harm in the context of injunctive relief:

> Prior to the Supreme Court's decision in *eBay*, this court followed the general rule that a permanent injunction will issue once infringement and validity have been adjudged, absent a sound reason to deny such relief. . . . In addition, at least ***in the context of preliminary injunctive relief***, we applied an express presumption of irreparable harm upon finding that a plaintiff was likely to succeed on the merits of a patent infringement claim. . . . In *eBay*, the Supreme Court made clear that "broad classifications" and "categorical rule[s]" have no place in this inquiry. . . . We take this opportunity to . . . confirm that ***eBay jettisoned the presumption of irreparable harm as it applies to determining the appropriateness of injunctive relief***.

*Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1148 (Fed. Cir. 2011).  Accordingly, Plaintiff cannot rely on presumption and must provide specific evidence regarding the existence of irreparable harm to warrant the issuance of a preliminary injunction.

**B.      Plaintiffs Cannot Demonstrate A Likelihood Of Success On The Merits Because A Substantial Question Regarding The Infringement Of The Patent Exists**

To demonstrate a likelihood of success on the merits, the moving party "must show that it will likely prove infringement, and that it will likely withstand challenges, if any, to the validity of the patent." *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1376 (Fed. Cir. 2009).

1.    *Plaintiffs failed to plead direct infringement against Cincom under Twombly*

In order to state a claim for patent infringement, "the allegedly infringing product must practice all elements of a patent claim." *Raptor, LLC v. Odebrecht Constr.*, No. 17-21509, 2017 WL 3503399, at *3 (S.D. Fla. June 22, 2017) (Altonaga, J.).   Furthermore, "[a]n allegation of direct patent infringement is insufficient under *Twombly* and *Iqbal* if it simply recites some of the elements of a representative claim and then describes generally how an accused product operates, without specifically tying the operation to any asserted claim or addressing all of the claim requirements." *Id*; *see also Blue Water Innovations, LLC v. Fettig*, No. 18-60671, 2019 WL 1904589, *2 (S.D. Fla. Mar. 8, 2019) (same).

In their Complaint, Plaintiffs accused numerous defendants of infringement. While they provided claim charts for some defendants, they only attached four pictures for the specific Cincom products without any explanation of how these products satisfy each element of the asserted claim. These pictures, originally included in Plaintiffs' TRO Motion, are now attached here as **Exhibit F**. As shown in these pictures, there is no mapping of claim elements, only a conclusory statement in the lower left corner asserting that the product is "Structurally Comparable to Wattne."  Wattne is a product made by another defendant for which Plaintiffs provided a claim chart.  However, this claim chart itself is also insufficient.

When examining the Wattne evidence, the video link labeled for the Wattne product actually leads to a video of a different product named Entesi from another company.  *Li Decl.*, ¶ 5, **Exhibit G**.  However, there is nothing from which a reasonable jury could infer that these two products work in the same way.  This discrepancy makes the reliance on Wattne to allege the infringement of Cincom equally insufficient. Thus, Plaintiffs fail to provide adequate grounds for

13

their infringement claims against Cincom, much less demonstrate a likelihood of success on the merits for the purposes of a preliminary injunction.

> 2.     *Defendant's Counsel Awaiting Prior Art Search Results and Requesting Leave to Supplement*

Although a patent enjoys a presumption of validity, the non-moving party may dispute this presumption by establishing the existence of a "substantial question" related to the invalidity of the patent. *See New England Braiding Co. v. A.W. Chesterton Co.*, 970 F.2d 878, 882 (Fed. Cir. 1992). At the preliminary injunction stage, the burden imposed on the non-moving party is merely to show "vulnerability" of the patent—not to establish the patent's "invalidity." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1359 (Fed. Cir. 2001) (noting that the non-moving party's burden requires less proof than the clear and convincing standard required at trial). Thus, an assertion of an invalidity defense that the moving party cannot show "lacks substantial merit" must result in the denial of a preliminary injunction. *Titan Tire Corp.*, 566 F.3d at 1379.

Defendant is actively conducting a prior art search to prepare for its invalidity case.  To provide sufficient information for the Court's status hearing on May 30, Defendant is filing this Opposition before the invalidity analysis is complete.  However, to the extent that the Court cannot determine whether to modify the TRO or deny the requested preliminary injunction based on this brief, Defendant respectfully requests leave to file a supplemental brief regarding the invalidity case.  The schedule for this brief can be discussed and agreed upon by all parties during the status conference, if necessary.

**C.     Plaintiffs Fail to Demonstrate Irreparable Harm By Relying On Conclusory Statements And Failing To Provide Factual Evidence**

As an initial matter, Defendant has already sworn under oath not to sell the Accused Products before the case is resolved.  *Qiu Decl.*, ¶ 16.  Consequently, Plaintiffs will not suffer any irreparable harm, even without a preliminary injunction.

Plaintiffs' Motion for Preliminary Injunction relies on a presumption of irreparable harm and cites a 1997 Federal Circuit case.  *See* Mem. In Supp. of Pl.['s] Mot. for TRO, at 9 (citing *Bell & Howell Doc. Mgmt Products Co. v. Altek Systems*, 132 F.3d 701, 708 (Fed. Cir. 1997) ("In matters involving patent rights, irreparable harm has been presumed when a clear showing has been made of patent validity and infringement.")).

However, as discussed above, the Supreme Court's ruling in *eBay Inc. v. MercExchange, L.L.C.* has eliminated this presumption of irreparable harm. 547 U.S. 388, 391 (2006); *see also Robert Bosch*, 659 F.3d at 1148 ("*eBay* jettisoned the presumption of irreparable harm as it applies to determining the appropriateness of injunctive relief.").  Accordingly, Plaintiff cannot rely on the asserted presumption and must clearly show the irreparable harm with specific evidence.  "In order for Plaintiff to make the requisite 'clear showing' that it is at risk of irreparable harm, it must show 'a likelihood of substantial and immediate irreparable injury.'"  *Lola Style, Inc. v. DM Merchandising, Inc.*, No. 13-20206, 2013 WL 12064498 at *3 (S.D. Fla., May 22, 2013) (citing *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 678 F.3d 1314, 1325 (Fed. Cir. 2012)); *see also Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (irreparable injury "must be neither remote nor speculative, but ***actual and imminent***.") (emphasis added).

Here, while Plaintiffs' Motion for Preliminary Injunction alleges irreparable harm in the form of diminished goodwill and consumer confidence, damage to reputation, loss of exclusive patent rights, and loss of future sales (Dkt. 5 at 9), Plaintiffs fail to demonstrate that these alleged harms are ***actual or factual***.  In support of their assertion of irreparable harm, Plaintiffs fail to offer any factual evidence such as consumer data or market reaction. Dkt. 5 at 9. Rather, Plaintiffs solely rely on the conclusory statements provided by the Associate General Counsel of Hyper Ice. *Id.* (citing Arnold Decl., ¶¶19-22).  For example, instead of providing the reasons or factual basis for

consumer confusion between Plaintiffs' and Defendant's products, Plaintiffs' submitted declaration simply concludes that "monetary damages fail to address the loss of control of and damage to Hyperice's reputation and goodwill due to the sale of Infringing Products that are sold at a substantial price difference from genuine Hyperice Products." Arnold Decl., ¶¶19.  Indeed, as this Court held in a published opinion in *Professional Airline Flight Control Association v. Spirit Airlines Inc.*, "when it comes to this 'extremely narrow' form of [injunction] relief, it's not enough for [the plaintiff] to simply parrot the legal standard." 593 F.Supp.3d 1173, 1188 (S.D. Fla., 2022). However, this is precisely what Plaintiffs are doing here—merely parroting the legal standard.

Here, Defendant is not arguing that a mass infringement of Plaintiffs' patent cannot cause irreparable harm, but rather that Plaintiff has failed to prove irreparable harm caused by ***this particular Defendant, Cincom***.  Cincom's sales of the accused product are low, and they have agreed under oath not to sell the accused products before the resolution of this case.  *See Qiu Decl.*, ¶¶ 5, 16.  Therefore, Defendant, Cincom, will not inflict irreparable harm upon Plaintiffs even in the absence of a preliminary injunction.

### D.     The Balance Of Equities Favors Denial The Preliminary Injunction

As previously described, Defendant has suffered significant prejudice due to the expanded enforcement of the TRO, including the potential delay of employee payments and possible layoffs, *See* Section IV.  In contrast, Plaintiffs argument largely repeats the points made in the irreparable harm analysis and consists of conclusory statements.  *See* Mem. In Supp. of Pl.['s] Mot. for TRO, at 10 ("As a result, irreparable harm to Hyperice in the nature of price erosion, loss of customer goodwill (*e.g.*, due to quality and pricing), and loss of business opportunities results in permanent, irreparable harm.").

Thus, the balance of equities weighs in favor of denying the preliminary injunction because the potential injury to Defendant from the preliminary injunction is supported by substantial

evidence and significantly outweighs the potential injury to Plaintiffs that is alleged in conclusory statements.

**E.      Plaintiffs Fail To Demonstrate That An Injunction Favors Public Interests**

The final consideration in the preliminary injunction analysis is whether the grant of a preliminary injunction favors public interest. *Celgard, LLC v. LG Chem, Ltd.*, 624 Fed. App'x 748, 752 (Fed. Cir. 2015). Because an obvious public interest in enforcing patent rights exists, the public interest inquiry requires "consideration of other aspects of the public interest." *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1341 (Fed. Cir. 2012).

Plaintiffs public interest arguments focus on a significant public injury from the potential false impression regarding Plaintiffs' grant of a license to Defendant for the '482 Patent.  But again, Plaintiffs rely solely on lawyer's argument without providing any evidence regarding the cause of such false impression.  *See* Mem. In Supp. of Pl.['s] Mot. for TRO, at 11 ("The public is currently under the false impression that Hyperice has granted a license or permission to Defendants with respect to the Hyperice Patent.  In this case, the injury to the public is significant, and the injunctive relief that Hyperice seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions.  As such, equity requires that Defendants be ordered to cease their unlawful conduct.").

In fact, consideration of the public interest requires a denial of Plaintiffs requested preliminary injunction. In a law review paper titled "A SAD Scheme of Abusive Intellectual Property Litigation," published in the Columbia Law Review Forum on November 20, 2023, Professor Eric Goldman describes a "sophisticated but underreported system of mass-defendant intellectual property litigation" known as the "Schedule A Defendants Scheme" (the "SAD Scheme"). *Li Decl.*, ¶ 6, **Exhibit H** at 183.

> The SAD Scheme capitalizes on weak spots in the Federal Rules of Civil Procedure, judicial deference to IP rightsowners, and online marketplaces' liability exposure. . . . [R]ightsowners can use these dynamics to extract settlements from online merchants without satisfying basic procedural safeguards like serving the complaint and establishing personal jurisdiction over defendants. This paper explains the scheme, how it bypasses standard legal safeguards, how it has affected hundreds of thousands of merchants, and how it imposes substantial costs on online marketplaces, consumers, and the courts.

**Exhibit H** at 183.  While many "Schedule A" filings are well-pleaded and effective for handling mass infringement efficiently, improper execution can be as egregious as the problem it seeks to address.  As a Judge in the Northern District of Illinois noted:

> The factories churning out fake goods are rivaled by the factories of law firms churning out Schedule A case after Schedule A case.  By and large, the Schedule A bar uses the same template in each case, treating the filings like a factory mold.  They change a few names, tinker here and there, and then kick out a new complaint for a new client.  It's a cut-and-paste mass assembly operation that would make Henry Ford himself feel proud.

*Zorro Productions*, 2023 WL 8807254 at *2 (Seeger, J.).  In this particular case, Plaintiffs' Complaint is based on patent law but seeks an assets freeze based on a trademark statute.  Such improper use of statutory grounds to secure preliminary injunction risks violating procedural norms and potentially depriving defendants of their rights without due process.  Therefore, denying the preliminary injunction here aligns with maintaining a fair judicial system, which ultimately serves the broader public interest.

## VI.    **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court deny Plaintiffs' Motion for Preliminary Injunction specifically against Defendant Cincom.

In the interim, before the Court issues its decision on the preliminary injunction, Defendant further moves to modify the TRO to release Cincom's frozen funds held by Amazon upon the posting of a $50,000 bond, or a higher amount if deemed necessary by the Court.

Defendant also requests that the Court order Plaintiffs to notify Amazon to reactivate Defendant's store and limit the restraining order and potential injunction only to the Accused Products.

If the Court cannot determine the preliminary injunction based on this brief and current available information, Defendant respectfully requests leave to file a supplemental brief addressing the merits based on the ongoing prior art search and other non-infringement evidence, according to a schedule that works for the Court and the parties.

## CERTIFICATION UNDER LOCAL RULE 7.1(a)(3)

Counsel for the moving Defendant has conferred with Plaintiffs on May 28, 2024.

Defendant requested that Plaintiffs notify Amazon to limit the TRO to the accused products.

However, this effort has been unsuccessful as of the preparation of this filing.


DATED:  May 23, 2024                    Respectfully submitted,

                                        *By      /s/ Daniel C. Mazanec*
                                        Daniel Mazanec (FL Bar No. 88737)
                                        PAG LAW
                                        Four Seasons Tower
                                        1441 Brickell Avenue, Suite 1120
                                        Miami, Florida 33131
                                        786.292.1599
                                        dan@pag.law

                                        Ziyong "Sean" Li (pro hac vice
                                        forthcoming)
                                        BENESCH, FRIEDLANDER, COPLAN &
                                        ARONOFF LLP
                                        100 Pine Street, Suite 3100
                                        San Francisco, California 94111
                                        628.600.2250
                                        sli@beneschlaw.com

                                        Attorneys for Defendant Shenzhen Cincom
                                        E-Commerce Co., Ltd.