UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| Hyper Ice, Inc. and Hyperice IP Subco, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified in Schedule "A,"<br><br>Defendant. | Case No. 1:24-cv-21791-RKA<br><br>Honorable Roy K. Altman |

**DEFENDANT ANSHICHUANGYI-US'S
MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER,
OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION,
AND MOTION TO DISMISS**

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................................. 1

II. FACTS. ................................................................................................................................... 2

III. Plaintiffs Cannot Establish a Likelihood of Success. .......................................................... 4

    A. Patent Infringement Standard .................................................................................... 4

    B. The Accused Product Does Not Include "a Drive Mechanism that Controls a Predetermined Stroke Length of the Piston." ........................................................... 5

IV. Plaintiffs Cannot Establish Irreparable Harm. ..................................................................... 9

V. Plaintiffs' Complaint Fails to Support Joinder under Section 299. .................................. 12

VI. CONCLUSION ..................................................................................................................... 14

# TABLE OF AUTHORITIES

**CASES** Page(s)

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
   239 F.3d 1343 (Fed. Cir. 2001)..................................................................................................4

*Apple Inc. v. Samsung Elecs. Co.*,
   735 F.3d 1352 (Fed. Cir. 2013) ................................................................................................12

*Dolly, Inc. v. Spalding & Evenflo Cos., Inc.*,
   16 F.3d 394 (Fed.Cir.1994)........................................................................................................9

*In re Apple Inc.*,
   650 F. App'x 771 (Fed. Cir. 2015) ...........................................................................................13

*Just Brands LLC v. Fla. Dept. of Agric. & Consumer Servs.*,
   23-civ-62081, 2023 WL 8852001 (S.D. Fla. Dec. 1, 2023) .....................................................11

*Khan v. Hemosphere Inc.*,
   No. 18 C 5368, 2019 WL 2137378 (N.D. Ill. May 16, 2019),
   *aff'd*, 825 F. App'x 762 (Fed. Cir. 2020)............................................................................ 13-14

*Koninklijke Philips N.V. v. Thales DIS AIS USA LLC*,
   39 F.4th 1377 (Fed. Cir. 2022) ...................................................................................................9

*Markman v. Westview Instruments, Inc.*,
   52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd on other grounds*, 517 U.S. 370 (1996).......... 4-5

*Oakley, Inc. v. Partnerships & Unincorporated Associations Identified on Schedule "A"*,
   No. 21 C 536, 2021 WL 308882 (N.D. Ill. Jan. 30, 2021) .......................................................12

*SME Racks, Inc. v. Sistemas Mecanicos Para, Electronica, S.A.*,
   243 Fed. App'x 502 (11th Cir. 2007) .........................................................................................9

*Takeda Pharms. U.S.A., Inc. v. Mylan Pharms. Inc.*,
   967 F.3d 1339 (Fed. Cir. 2020).................................................................................................10

*Tip Sys., LLC v. Phillips & Brooks/Gladwin, Inc.*,
   529 F.3d 1364 (Fed. Cir. 2008)...................................................................................................5

*Vitronics Corp. v. Conceptronic, Inc.*,
   90 F.3d 1576 (Fed. Cir. 1996)................................................................................................4, 5

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
   520 U.S. 17 (1997)......................................................................................................................8

Defendant AnshiChuangyi–US ("HeyChy"[1]) moves to dissolve the temporary restraining order (TRO) (Dkt. No. 15) that is preventing it from selling its massage gun product ("Accused Product") and is freezing its Amazon accounts.  HeyChy also opposes the preliminary injunction motion that Plaintiffs Hyper Ice, Inc. and Hyperice IP Subco, LLC (collectively, "Hyperice") currently seek.  HeyChy further asks the Court to dismiss it from this action for misjoinder under the patent joinder statute, 35 U.S.C. § 299.

I.      INTRODUCTION

Hyperice has obtained a TRO against HeyChy for allegedly infringing U.S. Patent No. 11,857,482 ('482 Patent), which is entitled "Massage Device Having *Variable Stroke Length*" (emphasis added).  The patented device has a massage head mounted on a piston.  The massage head moves in a "linear reciprocating motion"—*i.e.*, a back-and-forth punching or "percussive" movement.  The "stroke length" is the distance the massage head travels during one punch.  The '482 invention requires an *adjustable* stroke length.  The TRO enjoins HeyChy's sales of a *fixed* stroke length massager.  This distinction is not trivial; it addresses one of the core "innovations" of the '482 Patent.  Since the HeyChy massager does not fall within the scope of the asserted '482 claims, Hyperice cannot establish a likelihood of success at trial.

Moreover, Hyperice fails to articulate, let alone support, a prima facie case for irreparable harm.  First, Hyperice presents literally no evidence of any harm caused by HeyChy specifically.  Second, its perfunctory allegations of harm to reputation and goodwill (directed to all defendants, collectively) lacks even the most basic evidentiary support.  Hyperice cannot justify the extraordinary relief of a preliminary injunction with vague and unsupported allegations of reputational harm.

---

[1] "HeyChy" is Defendant AnshiChuangyi–US's storefront on Amazon.com.

Finally, Hyperice has not alleged that it has been harmed irreparably by defendant HeyChy specifically because it has lumped HeyChy into a lawsuit with a large group of as yet unknown defendants. Since Hyperice filed Appendix A, the defendant list, under seal, HeyChy presently does not know the identity of all its co-defendants. But Hyperice bears the burden of establishing a basis for joining all of the defendants in a single patent infringement action under the patent statute's joinder rule (35 U.S.C. § 299). In its Complaint, Hyperice ignores section 299 altogether and fails to plead *any* facts that justify joining HeyChy to this action. Hyperice does not allege that its infringement claims against all the various defendants arise out of the same transaction or occurrence, and Hyperice apparently recognizes that the accused products are not all the same. Accordingly, Plaintiffs' case against HeyChy not only fails to meet the standard for preliminary relief, but it also fails to comply with the patent statute's joinder rule. HeyChy asks the Court to dissolve the TRO against it and dismiss it from this lawsuit.

## II.     FACTS.

The Accused Product has a fixed stroke length of 7 mm. This fact presumably is undisputed; Hyperice provides the evidence of this fact in its own submission. The packaging for the HeyChy Accused Product is depicted in Exhibit 2 to the Declaration of Brian G. Arnold[2] ("Arnold Decl."), which Hyperice submitted in support of Plaintiffs' *Ex Parte* Application for Entry of Temporary Restraining Order, including a Temporary Injunction, a Temporary Asset Restraint, and Expedited Discovery ("ExParte TRO"). The packaging depicted in the Arnold Decl. specifies that the HeyChy massager has a fixed stroke length of 7 mm:

---

[2] Since Plaintiffs did not provide defendants with file-stamped copies of its filings, HeyChy is not able to provide Dkt. citations for Plaintiffs' documents.





3

The user manual for the Accused Product (attached as Exhibit A) also reflects the same:



### III. Plaintiffs Cannot Establish a Likelihood of Success.

To defeat Hyperice's TRO and preliminary injunction motion, HeyChy need not prove noninfringement as it would at trial, but rather need only show a "substantial question" of noninfringement that Hyperice cannot show "lacks substantial merit." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350-51 (Fed. Cir. 2001) (citing *Genentech, Inc. v. Novo Nordisk, A/S*, 108 F.3d 1361, 1364 (Fed. Cir. 1997)). Plaintiffs acknowledge that the standards for granting a TRO and a preliminary injunction are identical. *See* ExParte TRO at p. 7.

#### A. Patent Infringement Standard

A patent infringement analysis involves two steps: (1) "the proper construction of the asserted claim"; and (2) "a determination as to whether the accused method or product infringes the asserted claim as properly construed." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1581-82 (Fed. Cir. 1996). Claim construction "is a matter of law exclusively for the court." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995) (en banc), *aff'd on*

*other grounds*, 517 U.S. 370 (1996).  In interpreting an asserted claim, courts primarily look to the "intrinsic evidence"; *i.e.*, the patent itself—which includes the claims and the specification—and the prosecution history.  *Vitronics Corp.*, 90 F.3d at 1582.

First, courts look at the words of the claims themselves.  *Id.*  Words in a claim generally are given their ordinary and customary meaning, unless the patentee chooses to be his own "lexicographer" and provides a special definition that is clearly stated in the intrinsic evidence.  *Id.*

Second, the courts must review the specification to assess whether the inventor used the specification to define a term "expressly" or "by implication."  *Id.*  Third, courts construing claim terms may consider whether the patent "prosecution history" sheds light on the disputed claim terms.  *Id*.

For a product to infringe a given patent claim, each "limitation" of that claim must be found in the product either literally or through an equivalent.  *Tip Sys., LLC v. Phillips & Brooks/Gladwin, Inc.*, 529 F.3d 1364, 1377 (Fed. Cir. 2008) (the "All Elements Rule" applies to literal infringement and infringement under the doctrine of equivalents).

**B.   The Accused Product Does Not Include "a Drive Mechanism that Controls a Predetermined Stroke Length of the Piston."**

Claim 1 claims a "percussive massager" that includes, among other things, "a drive mechanism that controls a predetermined stroke length of the piston."  This limitation focuses on the claimed "control" function of the drive mechanism.  Properly construed, the drive mechanism must "control" the stroke length of the piston, which the user "predetermines."  In other words, the stroke length of the piston may be adjusted by the user.  As discussed below, this construction is supported not only by the claim language itself, the patent specification and the prosecution history, but also by the very title of the invention, which is "Massage Device *Having Variable Stroke Length*" (emphasis added).

5

Hyperice provided no definitions for any claim terms in this proceeding, and yet somehow stretches its claims to cover a massager device that has only a single, fixed stroke length that the user cannot adjust. Although Hyperice provides no claim term definitions or claim construction arguments in its brief, it presumably will argue that the term "control" means that the drive mechanism merely *defines* a stroke length that is "predetermined" by the designer or manufacturer before the device leaves the factory. This argument, however, makes little sense. If the drive mechanism merely determines a single stroke length, what is the point of saying "predetermined" here? Presumably, every percussive massager comes with at least one built-in stroke length. Saying that this stroke length is "predetermined" at the factory would add meaningless or confusing verbiage to the claim.

Moreover, the specification reflects that the term "predetermined" as used in the '482 Patent means determined by the user before use. The specification uses the term "predetermined" only once, and it does so only in the context of describing the adjustable stroke length embodiment. *See* '482 Patent at 7:65-8:3[3] ("In some embodiments, floating piston 720 is physically connected to the cam or other adjustment mechanism so that it is positioned in a predetermined position and remains stationary during operation of the drive piston"). In this context, it talks about locking the adjustment mechanism in a "predetermined position" so that it remains in place "during operation." Accordingly, the only "evidence" from the specification supports HeyChy's position that "predetermined" means determined by the user before using the device. If the user determines the stroke length, then by definition the stroke length is adjustable and is regulated by the drive

---

[3] References to the '482 Patent are by column and row. *E.g.*, "7:65-8:3" refers to column 7, row 65 through column 8, row 3.

6

mechanism. In other words, the drive mechanism is not merely setting the stroke length, it is controlling—*i.e.*, regulating—the stroke length.

The '482 prosecution history also supports this construction of the "drive mechanism" limitation of claim 1. The specification discloses two massager embodiments, one of which includes a fixed stroke length piston 230, and one of which includes a variable stroke length piston 740. In describing the variable stroke length apparatus, the specification discloses a cam 706, which is used as a drive mechanism that controls the piston stroke length. *See* '482 Patent at 7:54-64. The specification states that the user adjusts the piston stroke length by adjusting the rotational position of the cam. '482 Patent at 7:61-64. ("The cam may . . . be selectively rotated . . . to choose different magnitudes of floating piston movement resulting in different selected magnitudes of output piston movement.") This cam component is absent from the fixed stroke length embodiment described in the specification. In other words, the cam is a feature unique to the variable stroke embodiment.

During prosecution of the '482 Patent, the "drive mechanism" originally was limited to the cam structure, as reflected in the claim limitation below:

> a cam having a first rotational position that controls a predetermined stroke length of the piston to the minimum reciprocation stroke length, a second rotational position that controls the predetermined stroke length of the piston to the maximum reciprocation stroke length, and a plurality of intermediate rotational positions that control the predetermined stroke length of the piston to a plurality of intermediate stroke lengths between the minimum reciprocation stroke length and the maximum reciprocation stroke length; and

*See* Amendment After Final Action under 37 C.F.R. § 1.116 at p. 2, filed March 29, 2023 (attached as Exhibit B). This claim language effectively mirrored the cam described in the portion of the specification directed to the variable stroke length embodiment. *See* '482 Patent at 7:54-64.

7

During prosecution, the applicant revised this claim language, as shown below, to broaden the structural limitation from a "cam" to a "drive mechanism," which is a broader term:

> a [[cam]] <u>drive mechanism that controls</u> ~~having a first rotational position that controls~~ a predetermined stroke length of the piston ~~to the minimum reciprocation stroke length, a second rotational position that controls the predetermined stroke length of the piston to the maximum reciprocation stroke length, and a plurality of intermediate rotational positions that control the predetermined stroke length of the piston to a plurality of intermediate stroke lengths between the minimum reciprocation stroke length and the maximum reciprocation stroke length~~; <u>and</u>

*See* Response to May 15, 2023, Office Action at p. 2 (attached as Exhibit C). The applicant also removed the language addressing the rotational position of the cam but left in the language requiring the drive mechanism to control the "predetermined stroke length of the piston." In other words, the Applicant broadened the claim by including a broader range of structures that perform the same function as the cam; *i.e.*, controlling the "predetermined stroke length of the piston."

There is no way to read the plain language of claim 1 consistent with the specification, prosecution history, and title of the patent to apply to a fixed stroke length apparatus that has no drive mechanism with which to control the "predetermined stroke length of the piston." In claim 1, the applicant very clearly limited the invention to a variable stroke length apparatus that includes a drive mechanism (such as a cam, for example) that controls the piston's stroke length.

The Accused Product is indisputably a fixed stroke length massager. Accordingly, the Accused Product does not literally infringe claim 1.

The Accused Product also cannot infringe claim 1 under the doctrine of equivalents ("DOE") for at least two distinct reasons. First, any DOE argument would not clear the first prong of the function/way/result analysis. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39 (1997) (to infringe under the doctrine of equivalents, the relevant structure in the accused product must perform substantially the same function in substantially the same way to obtain the

8

same result as the missing claim element). No matter what structure in the Accused Product the Patent Owner might point to, that structure would not perform the *function* of controlling a predetermined stroke length of the piston, or any substantially similar function. This function, in essence, is binary. The apparatus either has a variable stroke length capability, or it does not. A drive mechanism that lacks this function cannot be equivalent to one that is required to perform this function.

Second, for similar reasons, no DOE analysis is available here because bypassing the drive mechanism limitation would effectively eviscerate it entirely and violate the well-established "All Elements Rule"; *i.e.*, the DOE may not be used to eliminate limitations in their entirety. *See, e.g., Dolly, Inc. v. Spalding & Evenflo Cos., Inc.*, 16 F.3d 394, 398 (Fed. Cir.1994) ("The doctrine of equivalents is not a license to ignore claim limitations.").

## IV. Plaintiffs Cannot Establish Irreparable Harm.

"A party seeking a preliminary injunction must establish that it is *likely* to suffer irreparable harm without an injunction." *Koninklijke Philips N.V. v. Thales DIS AIS USA LLC*, 39 F.4th 1377, 1380 (Fed. Cir. 2022) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)) (emphasis in original). "The mere possibility or speculation of harm is insufficient." *Id.* (citing *Winter*, 555 U.S. at 22 (rejecting the Ninth's circuit's "possibility" standard as "too lenient")); *see also SME Racks, Inc. v. Sistemas Mecanicos Para, Electronica, S.A.*, 243 Fed. App'x 502, 504 (11th Cir. 2007) (quoting *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000)) (stating that an irreparable injury supporting injunctive relief "must be neither remote nor speculative, but actual and imminent").

Plaintiffs' brief addresses irreparable harm in perfunctory fashion, stating that the "Defendants" (collectively) have "diminished goodwill and consumer confidence in Hyperice Products. . . ." ExParte TRO at p. 9. Plaintiffs' irreparable harm case relies entirely upon the

9

Arnold Declaration—which itself is conclusory and lacks any supporting injury figures, analysis or supporting evidence.

The Arnold Declaration addresses irreparable harm at paragraphs 19-21, which state only that the "Infringing Products" are damaging Hyperice's "reputation and goodwill" and that this harm is difficult to quantify. Mr. Arnold offers no details, stating only that he is "informed and believe[s]" that "consumer confidence in Hyperice" is damaged when consumers purchase infringing products that are "inferior in quality." Mr. Arnold offers no support for this assumption, which is flawed on many levels.

First, Mr. Arnold offers no evidence that all the Defendants' products are inferior. "Information and belief" may be sufficient to support a pleading allegation, but it is not evidence of "actual and imminent" harm that could support an injunction.

Second, even assuming all the various products of the various Defendants are inferior, Mr. Arnold does not explain how Plaintiffs' reputation is damaged whenever a competitor sells an inferior product. Mr. Arnold assumes, without any evidence of consumer *confusion*, that consumers attribute the *Defendants'* "inferior" products to the *Plaintiffs*. Absent evidence of confusion, one might just as easily assume the opposite: *i.e.*, that Plaintiffs' reputation is enhanced when consumers compare Plaintiffs' "superior" product to the "inferior competition." Without supporting evidence, both assumptions are purely speculative. Plaintiffs cannot justify the rare and extraordinary relief of a preliminary injunction with speculation. See *Takeda Pharms. U.S.A., Inc. v. Mylan Pharms. Inc.*, 967 F.3d 1339, 1349 (Fed. Cir. 2020) (appellant failed to show a likelihood of irreparable harm with bare assertions of price erosion and loss of market share).

Third, Plaintiffs direct their irreparable harm evidence broadly at a large group of unrelated defendants who, by Plaintiffs' admission, sell distinct types of products (see Joinder section,

below). None of Plaintiffs' evidence addresses HeyChy or HeyChy's product *specifically*. Plaintiffs present no evidence that HeyChy, specifically, has caused it any harm whatsoever—let alone harm that cannot be compensated via a damage award. Plaintiffs lump all the Defendants into one large group and then attempt to prove irreparable harm with generic allegations of harm that do not address any defendant specifically. This strategy illustrates one of the problems that the Leahy-Smith America Invents Act of 2011, 35 U.S.C. § 100 *et seq.* ("AIA") addresses by preventing patent holders from suing multiple, unrelated infringers in a single suit (see Joinder section, below).

Although Plaintiffs appear to focus their irreparable harm argument on generic statements about injury to "reputation and goodwill," Mr. Arnold also makes a passing reference to economic loss in the form of "diversion of customers" and loss of market share. Arnold Decl. at 20. Mr. Arnold fails to provide any supporting data or specifics of any kind—let alone evidence of any economic losses attributable to HeyChy specifically—as opposed to the other Defendants or other non-party competitors. Regarding market share, Mr. Arnold does not attempt to define the relevant market or offer even a guess as to his company's share of that market.

But even if Mr. Arnold had provided some sort of economic data, economic loss—even combined with general statements of harm to goodwill—cannot establish irreparable injury because it is compensable with a damage award. *See Just Brands LLC v. Fla. Dept. of Agric. & Consumer Servs.*, 23-civ-62081, 2023 WL 8852001, at *3 (S.D. Fla. Dec. 1, 2023) (holding that plaintiff's "relatively specific figures" of economic loss, "even coupled with non-specific allegations of loss of customers and goodwill, cannot alone establish irreparable injury.")

Finally, an injunction is inappropriate when a patentee cannot establish a "causal nexus" establishing that the patented features drive consumer demand:

11

> To show irreparable harm, it is necessary to show that the infringement caused harm in the first place. Sales lost to an infringing product cannot irreparably harm a patentee if consumers buy that product for reasons other than the patented feature. If the patented feature does not drive the demand for the product, sales would be lost even if the offending feature were absent from the accused product. Thus, a likelihood of irreparable harm cannot be shown if sales would be lost regardless of the infringing conduct.

*Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1360 (Fed. Cir. 2013) (quoting *Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1324 (Fed. Cir. 2012)). Plaintiffs offer no evidence or argument of any kind to suggest that consumers are purchasing HeyChy's product due to the patented features as opposed to other potential drivers of consumer demand (such as other product features, advertising, price, etc.). Accordingly, Plaintiffs fail to make a prima facie[4] showing on the causal nexus issue. Absent a causal nexus, Plaintiffs' request for injunctive relief would leverage the '482 Patent "for competitive gain beyond that which the inventive contribution and value of the patent warrant." *Apple Inc.*, 735 F.3d at 1361 (quoting *Apple, Inc.*, 678 F.3d at 1374-75).

For these reasons, Plaintiffs have failed to establish that HeyChy (specifically) is causing actual and imminent harm that a money award could not remedy. HeyChy asks the Court to vacate the TRO enjoining its sales and freezing its Amazon account and to deny Plaintiffs' motion for preliminary injunction.

## V. Plaintiffs' Complaint Fails to Support Joinder under Section 299.

Before the Leahy-Smith America Invents Act of 2011, 35 U.S.C. § 100 *et seq.* ("AIA"), patent holders commonly sued or attempted to sue multiple infringers in a single suit. "The AIA sought to put a stop to this." *Oakley, Inc. v. Partnerships & Unincorporated Associations Identified on Schedule "A"*, No. 21 C 536, 2021 WL 308882, at *1 (N.D. Ill. Jan. 30, 2021).

---

[4] HeyChy requests an opportunity to address any new evidence or new arguments that Plaintiffs raise for the first time in their upcoming reply.

Under 35 U.S.C. § 299, as amended by the AIA, accused patent infringers may be joined in a single action only if a claim "is asserted against the parties jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" that involve making, using, importing, offering to sell, or selling "the same accused product or process." 35 U.S.C. § 299(a)(1). In other words, there must be a "'logical relationship' between the claims linking the underlying facts." *In re Apple Inc.*, 650 F. App'x 771, 775 (Fed. Cir. 2015).

Hyperice's complaint (Dkt. 1) does not include *any* specific allegations that justify joining the accused infringers *en masse* in a single action under section 299. The complaint merely alleges that each of the defendants allegedly infringes the '482 Patent. (Dkt. 1 at ¶ 12.) But "accused infringers may not be joined in one action as defendants . . . based solely on allegations that they each have infringed the patent or patents in suit." 35 U.S.C. § 299(b).

The complaint contains *no* allegations that HeyChy is acting collectively with the other defendants or with a manufacturer that produces identical products for all the defendants. On the contrary, the accused products are not identical as evidenced by Mr. Arnold's Declaration, which identifies three different "categories" of products.[5] Moreover, since Hyperice admits that it "is currently unaware of both the true identities and exact locations of the Defendants . . ." (ExParte TRO at p. 12), it cannot contend that the defendants are related entities.

> Joinder is not suitable where a party completely fails to satisfy the 'requirement of a common transaction or occurrence where unrelated defendants, based on different acts, are alleged to have infringed the same patent.'

---

[5] Arnold Decl., Exh. 2 includes three claim charts: (1) for massage guns structurally comparable to Recoverfun; (2) for massage guns structurally comparable to Entesi; and (3) for massage guns structurally comparable to Wattne.

*Khan v. Hemosphere Inc.*, No. 18 C 5368, 2019 WL 2137378, at *3 (N.D. Ill. May 16, 2019), *aff'd*, 825 F. App'x 762 (Fed. Cir. 2020) (quoting *Rudd v. Lux Prod. Corp. Emerson Climate Techs. Braeburn Sys., LLC*, 2011 WL 148052, at *3 (N.D. Ill. Jan 12, 2011)).  Under the circumstances, the patent joinder statue requires Hyperice to file separate actions against the various defendants.  HeyChy, therefore, asks the Court to dismiss it from this lawsuit for improper joinder under section 299.

## VI. CONCLUSION

HeyChy asks this Court:

1. to find that Hyperice is not likely to succeed on the merits of its claims;
2. to dissolve the TRO against HeyChy;
3. to deny Hyperice's motion for a preliminary injunction against HeyChy; and
4. to dismiss HeyChy from this action for misjoinder under 35 U.S.C. § 299.

## LOCAL RULE 7.1 CERTIFICATE OF COUNSEL

On May 23, 2024, counsel for the movant conferred with plaintiff's counsel regarding in the relief sought in this motion. To date, plaintiff has not agreed to dissolve the TRO with respect to the moving defendant.

Dated: May 30, 2024

Respectfully submitted,

/s/ *Jason P. Stearns*
Jason P. Stearns (Florida Bar No. 059550)
Sarah A. Gottlieb (Florida Bar No. 125232)
**SMITH GAMBRELL & RUSSELL L LP**
201 North Franklin Street, Suite 3550
Tampa, FL  33602
Phone:  813-488-2920
Fax:  813-488-2960
E-mail:  jstearns@sgrlaw.com
E-mail:  sgottlieb@sgrlaw.com

Edward H. Rice (pro hac vice application forthcoming)
Marina Saito (pro hac vice application forthcoming)

        **LAW OFFICE OF EDWARD H. RICE, LLC**
        555 Skokie Blvd., Suite 500
        Northbrook, IL 60062
        Phone:  (312) 953-4566
        E-mail:  ed@edwardricelaw.com
        E-mail:  marina@edwardricelaw.com

        *Counsel for Defendant AnshiChangyi-US*

## CERTIFICATION OF SERVICE

    I CERTIFY that the within document has been filed on this 30th day of May 2024 through the CM/ECF system which will serve all counsel of record.

        */s/ Jason P. Stearns*
        Jason P. Stearns
        Attorney